## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21029-Civ-SCOLA/TORRES

ODALYS ABREU,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Odalys Abreu ("Plaintiff") [D.E. 17] and Nancy A. Berryhill, Acting Commissioner of Social Security Administration ("Defendant") [D.E. 19], on whether Administrative Law Judge Rebecca Wolfe (the "ALJ") properly weighed the evidence presented in reaching her unfavorable decision.[1]   Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's determination.   For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 17] should be **DENIED**, Defendant's motion for summary judgment [D.E. 19] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

---

[1]     On March 19, 2018, the Honorable Robert N. Scola referred the parties' cross motions to the underlying Magistrate Judge for disposition.   [D.E. 3].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2015, Plaintiff applied for supplemental security income alleging a disability as of June 14, 1990.  The Social Security agency denied Plaintiff's application initially and on reconsideration.   Thereafter, Plaintiff requested a hearing before an ALJ that was held on September 22, 2017.  The ALJ evaluated Plaintiff's application pursuant to the five-step sequential evaluation process for determining if a claimant is disabled under the Social Security Act.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of the application.   At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, diabetes mellitus, fibromyalgia, depression, and neurocognitive disorder.   The ALJ then determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app 1.

Prior to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work[2]:

> She could frequently climb ramps or stairs and balance; occasionally stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds.   The claimant could frequently reach overhead with both upper extremities.   She could frequently finger and handle bilaterally. The claimant should avoid exposure to extreme heat and cold, loud noise, vibration, and hazards, such as moving machinery and unprotected heights. She is able to understand and carry out simple oral and written instructions. The claimant could occasionally understand and carry out detailed oral and written instructions.   She is frequently

---

[2]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   *See* 20 C.F.R. § 404.1567(b).

2

able to respond to changes in demands in a routine work setting. The claimant is able to complete simple, routine, and repetitive tasks, but not at a production rate or pace. She is able to frequently avoid distractions, including psychologically based symptoms while working and while working with others without interrupting or disrupting them. The claimant is able to perform activities within a schedule, maintaining regular attendance and being punctual within the customary tolerances. She could maintain concentration for at least 2 hours at a time, but might be off task 5 minutes per hour.

[Tr. 22].

At step four, the ALJ found that Plaintiff had no past relevant work. At the final step, the ALJ relied on the testimony of a vocational expert ("VE") to find that a hypothetical claimant with Plaintiff's RFC could perform other work that existed in significant numbers in the national economy. These occupations included a price marker, hand packager, and electrical assembler. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record as a whole to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).   Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive and we must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).   However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).   The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew.

Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.  Therefore, a court's responsibility is to ensure that the proper legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.     ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant bears the burden of producing evidence that proves he or she meets this statutory definition.  "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).  The steps are followed in order to determine if the claimant is disabled.  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed.   If so, a finding of non-disability is made and the inquiry ends.   *See* 20 C.F.R. § 404.1520(b).   In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If the ALJ does not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed and benefits are awarded.   *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1).   This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three ways: (1) whether the ALJ properly considered the medical opinion evidence, (2) whether the RFC is supported by substantial evidence, and (3) whether the ALJ properly relied on the VE's testimony.   We will consider each argument in turn.

### A.   *Whether Substantial Evidence Supports the Weight Given to the Medical Opinions*

An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors. *See id*.   Absent good cause, the ALJ must give a treating[3] physician's opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.   "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."   *Id.*   Furthermore, the ALJ

---

[3]      A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

must state with particularity the weight given to different medical opinions and the reasons therefore. *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence). The opinion of a one-time examiner is not entitled to deference or special consideration. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining

physician).   The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion.  *See* 20 C.F.R. § 404.1527(d)(4).[4]

1.   *Failure to Weigh Dr. Abrue's Medical Opinion*

Plaintiff's first argument is that the ALJ failed to weigh or even reference the opinion of Plaintiff's treating physician, Dr. Abrue.   For example, Dr. Abrue opined that Plaintiff has a severe limitation in the ability to walk due to an arthritic, neurological, or orthopedic condition and that Plaintiff could walk 200 feet without stopping to rest.   But, Plaintiff claims that the ALJ completely ignored Dr. Abrue's opinion when finding that Plaintiff could only stand and/or walk for a limited amount of time in an 8-hour workday.   Because the ALJ failed to reference Dr. Abrue's opinion and omitted Plaintiff's limitations in the hypothetical question to the VE, Plaintiff concludes that the ALJ's decision is not supported by substantial evidence.

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor."  *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial

---

[4]      Plaintiff does not contest the ALJ's findings regarding Dr. Johnson and has therefore waived any argument as it relates to his opinions.  *See, e.g., Outlaw v. Barnhart,* 197 F. App'x 825, 828 n.3 (11th Cir. 2006) ("Outlaw also asserts that the ALJ erred in not crediting Outlaw's physical exertional impairments.   But Outlaw has waived this issue because he did not elaborate on this claim or provide citation to authority about this claim.") (citing *Cheffer v. Reno,* 55 F.3d 1517, 1519 n.1 (11th Cir.1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); *N.L.R.B. v. McClain of Georgia, Inc.,* 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

evidence.  *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  If an ALJ makes clear that she considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error.  *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).  In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

Plaintiff's argument is unpersuasive because the *opinion* Plaintiff relies upon is merely Dr. Abrue's certification on a standard Florida Department of Highway Safety Application for a disabled person parking permit that Plaintiff's condition "limits or impairs his/her ability to walk 200 feet without stopping to rest."  [Tr. 528].  That is, Dr. Abrue's certification is not a medical opinion because a medical opinion consists of "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20

10

C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.   Plaintiff's reliance on Dr. Abrue's certification omits all the required information to constitute a medical opinion.   But, even if put aside that problem, Plaintiff's argument still fails because Dr. Abrue "did not express that opinion in terms of how it would limit [Plaintiff's] ability to work."   *Glover v. Colvin*, 705 F. App'x 815, 818 (11th Cir. 2017). That is, even if Dr. Abrue's certification is a medical opinion, it "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory," – a deficiency that applies to Dr. Abrue's certification in both respects.   *Edwards v. Sullivan,* 937 F.2d 580, 583–84 (11th Cir. 1991).   Because Dr. Abrue's certification is conclusory, devoid of medical evidence, and therefore not a medical opinion, the ALJ's decision to omit any consideration of Dr. Abrue's certification is supported by substantial evidence.

   2.   <u>*Failure to Accord Dr. Ference's Medical Opinion Great Weight*</u>

   Plaintiff's second argument is that the ALJ erred when she accorded Dr. Ference's opinion little weight.   On May 9, 2017, Dr. Ference completed a medical source statement outlining Plaintiff's physical and mental restrictions.   Dr. Ference opined that Plaintiff was limited to less than sedentary work because she could not lift more than 10 pounds and could only stand and/or walk for less than 2 hours in an 8-hour work day.   Dr. Ference also stated that Plaintiff could never climb, balance, crouch, crawl, or stoop and that Plaintiff has manipulative and environmental limitations.

   Plaintiff argues that the ALJ committed reversible error because there was no

support for the finding that Dr. Ference's opinion was inconsistent with the underlying record. The ALJ stated that Dr. Ference's opinion was inconsistent because Plaintiff stated at the hearing that she might be able to make a bed, "pick up a little . . . pick up her daughter from school . . . prepare simple meals," and "go out alone." [Tr. 21]. But, Plaintiff claims that there is nothing inconsistent between Dr. Ference's opinion and Plaintiff's testimony because making a bed, for example, does not require standing for more than 30 minutes or picking up more than 10 pounds. Plaintiff also suggests that preparing simple meals or "picking up a little," do not establish that Dr. Ference's opinion was inconsistent with the underlying record. Plaintiff claims, instead, that Dr. Ference's opinion is supported in the treatment notes and that there is evidence showing how Plaintiff suffers from significant pain. Therefore, Plaintiff concludes that the ALJ lacked good cause to accord Dr. Ference's medical opinion little weight.

Plaintiff's argument is unpersuasive because the ALJ stated in her decision the reasons for according Dr. Ference's medical opinion little weight. The ALJ relied on Plaintiff's own testimony where Plaintiff asserted that she could perform several activities of daily living including (1) making her bed, (2) picking up items, (3) transporting her daughter from school, (4) preparing simple meals, and (5) being able to go outside alone. Plaintiff claims that these activities do not undermine Dr. Ference's opinion. But, Plaintiff's argument is nothing more than a disagreement on how the ALJ weighed the testimony provided at the hearing. The ALJ obviously found Plaintiff's testimony credible and found it inconsistent with the limitations in

Dr. Ference's medical opinion.   While Plaintiff may ultimately disagree on whether there is an inconsistency, "[t]he [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly."   *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).   In other words, even if we disagree with the ALJ's resolution of the factual issues and would resolve those differently, the ALJ's decision should be affirmed because if Plaintiff could perform all those activities that she testified to at the hearing, it undermines the extensive limitations found in Dr. Ference's medical opinion.   As such, we conclude that the ALJ's decision to accord Dr. Ference's medical opinion little weight is supported by substantial evidence.

> **B.** **Whether the ALJ was required to find Plaintiff disabled under the Medical Vocational Guidelines**

Plaintiff's second argument is that the ALJ should have found Plaintiff disabled under the Medical Vocational Guidelines (the "grids") because the ALJ should have adopted the opinions of Dr. Abrue and Dr. Ference.   Once a claimant has established that she cannot return to her past relevant work, the burden shifts to the Secretary to prove that the claimant is capable, considering her age, education, and work experience, of engaging in any other kind of gainful employment.   *See* 42 U.S.C. § 423(d)(2)(A).   At this stage, "[t]here are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy."   *Phillips,* 357 F.3d at 1239.   First, the ALJ may apply the grids found in 20 C.F.R. § 404, subpart P, appendix 2.   Second, the ALJ may consult a VE

by posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment. *See Phillips*, 357 F.3d at 1239–40.

The grids provide tables based on work classifications of sedentary, light, medium, heavy or very heavy. These classifications are based on the exertional level, or primary strength activities, the work requires, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. Each table considers vocational factors, such as age, education and work experience, to "direct a conclusion" of either disabled or not disabled. *See generally,* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). These tables constitute "administrative notice" as to the number of unskilled jobs that exist in the national economy at the various exertional levels. Thus, when all the claimant's vocational factors coincide with the criteria in the table, "the existence of jobs is established." *Id*. at 200.00(b).

The Eleventh Circuit has repeatedly recognized that "exclusive reliance on the grids is not appropriate either": (1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or (2) "when a claimant has non-exertional impairments [i.e., impairments not related to strength] that significantly limit basic work skills." *Phillips,* 357 F.3d at 1242 (internal brackets omitted); *Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir.1989); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In either of these cases, the claimant's occupational base (i.e. the number of jobs she is able to perform based on his RFC, age, education and work experience) may be affected. In these kinds of cases, the

14

ALJ must make an individualized assessment and consult a VE to determine whether there are jobs in the economy the claimant can perform. *See Phillips,* 357 F.3d at 1242–43.

When the ALJ cannot rely solely on the grids, the ALJ nonetheless "may use [the grids] as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir.2002); *see also Smith v. Bowen,* 792 F.2d 1547, 1554–55 (11th Cir. 1986) (stating that the grids "may serve as a framework for consideration of the combination of the exertional and nonexertional limitations"). The regulations likewise recognize that the grids can "still provide guidance for decisionmaking." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d).

Plaintiff's argument is unpersuasive for at least two important reasons. First, "[n]othing in the relevant statutes or regulations *requires* the ALJ to use the grids as a framework in all instances," because there are two available options under step five of the sequential evaluation:

> [T]he ALJ has two options under step five: the grids or the testimony of a VE. Under certain circumstances, the ALJ cannot rely solely on the grids and must consult a VE. Under other circumstances, it may be appropriate to consider both. However, this Court has never held that when the ALJ uses VE testimony, the ALJ *must* also consider the grids. Once it is clear that the grids do not direct a finding of disability one way or the other, the ALJ must make an individualized assessment of whether the claimant can "make an adjustment" to other work based on that particular claimant's RFC, including any exertional and nonexertional limitations, and the claimant's other vocational factors such as age, education and past experience. While reference to the

15

grids may be helpful in some cases, the grids are in fact a proxy for individualized evidence, and may not always be helpful.

*Watson v. Astrue*, 376 F. App'x 953, 958 (11th Cir. 2010) (emphasis in original).   This means that Plaintiff's argument – that the ALJ was required to use the grids to find Plaintiff disabled – is incorrect as a matter of law.

Second, even if the ALJ was required to use the grids, Plaintiff's argument fails because substantial evidence supports the ALJ's decision to not adopt the opinions of Dr. Abrue and Dr. Ference.   And without those medical opinions and the limitations found therein, the grids do not support a finding that Plaintiff is disabled because Plaintiff is restricted to light – not sedentary work.   Therefore, the ALJ's decision is supported by substantial evidence.

### C.     *Whether Substantial Evidence Supports the ALJ's Decision to rely on the VE's Testimony*

An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevance evidence in the record.   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   1996 WL 374183, at *2.

16

"'The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96–8p, 1996 WL 374184). The Social Security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (SSR 96–8p at 6). As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specifically and explicitly set forth his findings with respect

to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x. at 959–60).

Plaintiff's final argument is (1) that the ALJ improperly relied on the VE's testimony and (2) that the ALJ's RFC assessment warrants a finding that Plaintiff is disabled.   More specifically, Plaintiff contends that – although the RFC and the hypothetical to the VE found that were a substantial number of jobs in the national economy that Plaintiff could perform – Plaintiff should have been found disabled. Plaintiff takes issue, for example, with the term "frequently" in the RFC limitation because Plaintiff could only frequently avoid distractions while working with others. Plaintiff suggests that if an individual is only able to frequently avoid distractions then that only accounts for one-third to two-thirds of the time during the workday.[5] And if that is true, based on the VE's testimony, then Plaintiff should be disabled because an individual off task 10 percent of the time is "not going to be able to maintain employment."   [Tr. 104].   Plaintiff also argues that the ALJ's RFC is work-preclusive because, based on the VE's testimony, all jobs have production expectations which cannot be met given the ALJ's restrictions.   Therefore, Plaintiff concludes that the ALJ's finding – that there are jobs in the national economy that Plaintiff can perform – is unsupported by substantial evidence.

As an initial matter, there does not appear to be any conflicts in the VE's testimony or the ALJ's RFC findings.   Plaintiff claims that, because the ALJ found

---

[5]      Social Security Ruling 83–10 provides that "[f]requent" means occurring from one-third to two-thirds of the time."   SSR 83–10.

Plaintiff to only frequently avoid distractions, then that means Plaintiff may be off task more than 10 percent of the time.   But, there is no support in the record that avoiding distractions is the same as being off task.   And Plaintiff provides no factual or legal authority – and the Court can find none – to make that connection.   The ALJ also made clear in the RFC that Plaintiff could maintain concentration for at least two hours at a time and might be off task for only 5 minutes per hour.   This means that the ALJ's RFC finding is consistent with VE because the latter testified that 5 minutes off task is to be expected when working.   Plaintiff's alternative argument also rings hollow because the ALJ's restrictions are not work-preclusive.   The restrictions merely identify a subset of occupations that Plaintiff can perform while ensuring that those jobs are also available in the national economy.[6]   Therefore, we conclude that there are no inconsistencies between the ALJ and the VE.

Even if we assume that there were conflicts in the record between the ALJ's restrictions and the VE's testimony, Plaintiff's counsel "did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or question the VE on this issue," during the administrative hearing.   *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011).   That is, Plaintiff's counsel failed to identify conflicts at the hearing to meet her burden of proof or to preserve her arguments on appeal.   *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x

---

[6]   We note that Plaintiff's final arguments were both conclusory and unclear. For example, Plaintiff advanced arguments without fully explaining them and then concluded that the ALJ's decision lacks substantial evidence.   Although we considered the arguments presented to the fullest extent possible, it is not the role of the Court to expend judicial resources and piece together a party's reasoning.

973, 975 (11th Cir. 2012) ("Leigh did not offer any evidence controverting the VE's opinion, nor did she object to the opinion."); *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("Curcio stipulated to the VE's qualifications and did not object to her offering an opinion about the number of jobs existing in the relevant economies.   Nor did Curcio offer any evidence controverting the VE's testimony.").   In sum, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings.   *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court therefore finds that the ALJ's conclusions are supported by substantial evidence.   For these reasons, Plaintiff's motion for summary judgment [D.E. 17] should be **DENIED** and Defendant's motion for summary judgment [D.E. 19] should be **GRANTED**.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision.   The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.   For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 17] be **DENIED**, that Defendant's motion for summary judgment [D.E. 19] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within

which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 15th day of January, 2019.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

21